E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
ANNE C. GANNON
Assistant United States Attorney
Chief, Santa Ana Branch Office
KRISTIN N. SPENCER (Cal. Bar No. 294692)
MELISSA S. RABBANI (Cal. Bar No. 283993)
Assistant United States Attorneys
    U.S. ATTORNEY'S OFFICE
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3500
    Facsimile: (714) 338-3561
    E-mail:   kristin.spencer@usdoj.gov
             melissa.rabbani@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 21-124-JLS |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: July 19, 2024 |
| CHRISTOPHER JOHN BADSEY, | 9:30 a.m. |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kristin Spencer and Melissa Rabbani, hereby submits its position regarding sentencing.

The government's position is based upon the attached memorandum of points and authorities, the files and records in this case, the revised Presentence Report ("PSR") and revised disclosed recommendation letter filed on February 26, 2024, and any other

evidence or argument that the Court may wish to consider at the time of sentencing.

Dated: July 5, 2024            Respectfully submitted,

                                        E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

*/s/ Melissa S. Rabbani*
KRISTIN N. SPENCER
MELISSA S. RABBANI
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In the height of the COVID-19 pandemic, defendant Christopher John Badsey ("defendant") falsely promised to sell millions of boxes of nitrile gloves – critical personal protective equipment that was in short supply worldwide – to buyers in the medical industry. Through his company, defendant accepted over $3 million in deposits for those gloves from potential purchasers. But by his own admission, defendant never had possession of or access to any such gloves, never delivered any such gloves, and never returned the deposits he received. Instead, defendant and others used the deposit money to make expensive purchases, all while stringing would-be purchasers along with false stories, including absurd claims that government agents were blocking access to his warehouse of gloves.

Based on that conduct, in April 2023, defendant pled guilty to four counts of wire fraud in violation of Title 18, United States Code, Section 1343. Dkts. 57, 61.

Earlier this year, defendant submitted a sentencing memorandum attaching several "letters of support" and a purported medical record that were determined to be forged.

Following that revelation, the United States Probation Office ("USPO") filed a revised Presentence Report ("PSR") on February 26, 2024. Dkt. 84. The USPO determined that the total applicable offense level in this case is 25 and that defendant's criminal history is in category II, resulting in a guidelines range of 63 to 78 months. Id. at 4. The USPO recommends that the Court impose a high-end sentence of 78 months' custody, followed by a three-year period of supervised release, and order a special assessment of $400.

Dkt. 83. The USPO further recommends that defendant be ordered to pay restitution of $1,938,990 to three victims, as defendant agreed to do in the plea agreement. Dkt. 83; see also Dkt. 57 at 8.

The government agrees with the USPO's calculations and its recommended order of restitution. The government respectfully recommends a slightly lower, mid-range sentence of 72 months' custody, followed by a three-year term of supervised release, and believes this sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

**II. SUMMARY OF RELEVANT FACTS**

The facts below relating to the offense conduct in this case are taken from the plea agreement defendant signed on April 7, 2023.

In June and July 2020, in Orange and Los Angeles Counties, defendant knowingly devised, participated in, and executed a scheme to defraud Victim Companies 1, 2, and 3 by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

In particular, defendant falsely represented to Victim Companies 1, 2, and 3 that he had access to millions of boxes of medical-grade nitrile gloves, personal protective equipment that was in high demand and short supply during the COVID-19 pandemic. Through the company that he owned and controlled, First Defense International Security Services Corporation ("FDI"), defendant entered into contractual agreements with Victim Companies 1, 2, and 3 to sell each company millions of boxes of gloves. Defendant then told representatives from Victim Companies 1, 2, and 3 that before they could inspect the gloves, which were stored in a warehouse in Los Angeles, the companies would be required to pay deposits upwards of $1 million to

FDI.  In fact, defendant did not have any gloves stored in any warehouse.  Defendant knew that his statements were false and acted with the intent to defraud Victim Companies 1, 2, and 3.

    To execute his scheme, defendant instructed representatives of Victim Companies 1, 2, and 3 to transmit the deposits by wire transfer to bank accounts controlled by defendant himself, a co-schemer, and/or FDI.  Relying on defendant's false representations that he had millions of boxes of nitrile gloves to sell, representatives from Victim Companies 1, 2, and 3 made the requested wire transfers.  In particular, defendant caused the transmission of the following items by means of wire communication in interstate and foreign commerce:

        a.    On June 15, 2020, a deposit of $1,174,990 from Victim Company 1 to defendant's bank account;

        b.    On June 17, 2020, a partial deposit of $787,000 from Victim Company 2 to defendant's bank account;

        c.    On June 17, 2020, a partial deposit of $270,000 from Victim Company 2 to defendant's bank account; and

        d.    On July 2, 2020, a deposit of $1,000,000 from Victim Company 3 to defendant's co-schemer's bank account.

    As part of his plea agreement, defendant agreed that he would be required to pay full restitution to the victims of his offenses.  See Dkt 57 at 8.  Defendant also agreed to forfeit certain assets, at least some of which were purchased with the proceeds from his fraudulent scheme.[1]

---

[1] Those assets have been administratively forfeited to the Federal Bureau of Investigation.  As such, no order of forfeiture is needed from this Court.

1  Defendant was set to be sentenced in February 2024. On January
2  26, 2024, defendant submitted a sentencing position attaching a
3  number of exhibits, including several "letters of support" from
4  purported friends and acquaintances and a purported medical record
5  documenting a brain cancer diagnosis from 2017. See Dkt. 72 at 3;
6  Dkt. 72-1 at 10, 12-28. The USPO and the government contacted
7  several of the purported authors of those character letters and
8  learned not only that those letters had been forged, but that
9  following his initial appearance in 2021, defendant forged the
10 signature of his proposed surety and used a copy of the proposed
11 surety's driver's license without his authorization. See Dkt. 85 at
12 2-4. Defendant has provided no additional documentation supporting
13 the purported medical record – which appears suspect on its face.
14 See id.
15 In response to a motion by the government, this Court found that
16 defendant had breached his plea agreement by submitting those forged
17 documents and that the government was thus released from its
18 obligations under the plea agreement. See Dkt. 86. As a result, the
19 government is no longer bound by the terms of the plea agreement –
20 which required, among other things, that the government recommend a
21 low-end sentence under the Guidelines. See Dkt. 57 at 6-7.
22 **III. PRESENTENCE REPORT**
23 The USPO determined the base offense level to be 7. Dkt. 84 at
24 14. The USPO then applied a 16-level increase because of the loss
25 amount resulting from defendant's fraudulent scheme, as well as a
26 two-level increase for defendant's obstruction of justice in
27 submitting forged documents to the USPO and to the Court. Id. at 14-
28 16. Notably, the USPO declined to apply any decrease for acceptance

of responsibility, given that defendant has failed to withdraw from criminal conduct and has engaged in conduct constituting obstruction of justice. Id. at 16-17. Thus, the USPO calculated the total offense level in this case as 25. Id. at 17.

The USPO also determined that defendant's total criminal history score for this offense is two, resulting in a criminal history category of II and a guidelines range of 63 to 78 months. Dkt. 84 at 19-21, 30.

The USPO recommends that the Court impose a high-end sentence of 78 months' custody, followed by a three-year period of supervised release. Dkt. 53. The USPO also recommends that defendant be ordered to pay a total of $1,938,990 in restitution to three victims: Terry Booth ($668,990), Christiaan van der Velde ($270,000), and John Anthony Bijan Faranghui ($1,000,000). Id. at 1. Finally, the USPO recommends that all fines be waived, as defendant has no ability to pay. Id. at 2.

**IV. THE GOVERNMENT'S POSITION**

The government concurs with the USPO's calculations and its recommended order of restitution. However, the government recommends a slightly lower, mid-range sentence of 72 months' custody. The government believes this sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

Defendant took advantage of a global pandemic. While tens of thousands of Americans died of COVID, and millions of Americans upended their daily lives to mitigate its spread, defendant saw only an opportunity to line his own pockets. Through repeated and often fantastical lies, defendant obtained over $3 million in deposit money

5

for products he never had.  When confronted, defendant continued to lie and refused to refund any deposit money.  Moreover, defendant's personal history, as discussed in the PSR, reveals a troubling history of deceit and theft – and an aversion to honest work.

In addition, nothing about this criminal prosecution seems to have deterred defendant's worst instincts.  After his arrest, defendant submitted forged documentation to keep himself out of custody.  And as his sentencing approached, defendant forged a number of character letters in the hopes of reducing his own sentence.

Based on those facts, the government believes that a sentence of 72 months' custody is appropriate and necessary to, among other things, punish defendant and deter him from attempting similar schemes in the future.

In addition, as defendant himself has agreed, he should be ordered to pay restitution to the victims of his crimes.  The government agrees with the USPO's recommendation that defendant be ordered to pay restitution as set forth in the USPO's disclosed recommendation letter.  See Dkt. 83.  The government further agrees that defendant has demonstrated an inability to pay any fine, and the government agrees with the USPO's recommendation that all fines be waived.  See id.

## V.   CONCLUSION

As set forth above, the government respectfully recommends that the Court (i) impose a sentence of 72 months' custody, to be followed by a three-year period of supervised release; (ii) order a mandatory special assessment of $400; and (iii) order defendant to pay restitution as set forth in the PSR and the USPO's disclosed recommendation letter.  The government submits that this sentence is

sufficient, but not greater than necessary, to punish defendant, promote respect for the law, deter defendant from committing similar crimes in the future, and avoid sentencing disparities.  <u>See generally</u> 18 U.S.C. § 3553(a).